2022 IL App (1st) 220687-U

No. 1-22-0687

Order filed September 7, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| SAME CONDITION, LLC, an Illinois Limited Liability Company, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff and Counterdefendant-Appellant, | ) ) | |
| v. | ) ) | |
| CODAL, INC., an Illinois Corporation, | ) ) | No. 19 L 5407 |
| Defendant and Counterplaintiff-Appellee | ) ) ) ) | |
| (Munish Kumar, a/k/a Munish Kumar Raizada, | ) ) | Honorable Thomas More Donnelly, |
| Counterdefendant-Appellant). | ) | Judge presiding. |

JUSTICE BURKE delivered the judgment of the court.
Justices Gordon and Ellis concurred in the judgment.

**ORDER**

¶ 1     *Held*: Where Same Condition, LLC, and Munish Kumar did not file a timely
        postjudgment motion or notice of appeal from the circuit court's order imposing a

permanent injunction on them, we lack jurisdiction to consider the merits of that injunction and dismiss this appeal.

¶ 1 After a business relationship between Codal, Inc. (Codal), and Same Condition, LLC (Same Condition), soured, Same Condition sued Codal for breach of contract, among other claims. Codal then countersued Same Condition and its president, Munish Kumar, raising various claims, including ones sounding in defamation based on critical comments and reviews that Same Condition and Kumar had posted online. As the litigation progressed, Same Condition and Kumar continued posting critical comments and reviews online about Codal and its chief executive officer, Keval Baxi, which resulted in Codal filing motions for a preliminary injunction and temporary restraining order to have Same Condition and Kumar cease their online campaign. Although the circuit court denied those motions, it utilized its inherent authority to manage its cases and prohibited Same Condition and Kumar from making any additional posts online about Codal. Same Condition and Kumar appealed the circuit court's order and contended that the injunction was an unconstitutional abridgment on their right to free speech under both the first amendment of the United States Constitution (U.S. Const., amend. I) and article 1, section 4, of the Illinois Constitution (Ill. Const. 1970, art. I, § 4). We agreed and vacated the order.

¶ 2 The litigation continued in the circuit court, where, on Codal's motion for summary judgment, the court granted judgment in favor of Codal on all of Same Condition's claims and some of its own counterclaims, but denied judgment on some of its counterclaims. However, the court did find that Same Condition and Kumar's barrage of online postings were defamatory and entered a permanent injunction that, in part, barred them from publishing similar defamatory statements about Codal in the future. Two and a half months after the court entered the injunction, Same Condition and Kumar challenged, in part, the court's injunctive relief. The court denied their motion, and they appealed therefrom.

¶ 3    On appeal, Same Condition and Kumar again contend that the circuit court's injunction is an unconstitutional abridgment on their right to free speech under both the first amendment of the United States Constitution (U.S. Const., amend. I) and article 1, section 4, of the Illinois Constitution (Ill. Const. 1970, art. I, § 4). They also raise various other issues from the proceedings below. However, because Same Condition and Kumar did not file a timely postjudgment motion or notice of appeal from the court's order imposing the permanent injunction on them, we lack jurisdiction to consider the merits of that injunction and must dismiss this appeal.

¶ 4                                I. BACKGROUND

¶ 5    Codal is a corporation that provides personnel with expertise in the fields of systems integration, information technology consulting, and systems development. Same Condition is a company that intended on creating a web-based, medical patient-centered software application. In June 2017, Same Condition hired Codal to develop that software application. According to Section 10.2 of their agreement, if Codal was forced to pursue legal action against Same Condition for its nonpayment, Codal would be entitled to recover reasonable attorney fees and costs. According to Same Condition's interpretation of their agreement, Codal was supposed to deliver the software application to it by January 2018. But, by January 2018, Codal had failed to deliver the application. And, in July 2018, when Codal had delivered the software application, Same Condition believed the application was incomplete, substandard, rife with errors and bugs, and inadequate to be released publicly. According to Same Condition, by October 2018, Codal indicated that it needed at most 100 more hours of work to complete the application to Same Condition's specifications.

¶ 6    Eventually, in May 2019, after the software application allegedly did not meet Same Condition's standards, it sued Codal for breach of contract, fraud, and unjust enrichment. Two months later, Codal answered Same Condition's complaint and denied the chief allegations

therein. Codal also raised several affirmative defenses and brought counterclaims against Same Condition, including breach of contract for Same Condition's failure to pay an invoice of $30,750, unjust enrichment and *quantum meruit*, the latter two as alternatives to its breach of contract claim.

¶ 7     In August 2019, Codal, with leave from the circuit court, filed its first amended counterclaims. Codal added claims for defamation *per se*, defamation *per quod*, a violation of the Uniform Deceptive Trade Practices Act (Deceptive Practices Act) (815 ILCS 510/1 *et seq.* (West 2018)) and commercial disparagement against Same Condition and Munish Kumar, Same Condition's president. All four counterclaims were based on online posts from Kumar and Same Condition about Codal's performance and business integrity. Codal attached these posts as exhibits to its first amended counterclaims.

¶ 8     One exhibit showed a comment on a post from Codal's LinkedIn page, where Kumar stated that he hired Codal to build an "ambitious" software platform and "gave them a huge sum" but the project was not completed on time and the platform that was completed was defective. Kumar added that he had to hire a third-party quality assurance tester to test Codal's platform and remarked that it was:

> "more than clear that Codal lacks the technical expertise to build the software or our specifications. It was not a small platform (technically, but then we hired Codal because they assured that have the required skill sets to accomplish the kind of work it requires. And they asked is premium cost, which we kept paying as bills kept coming). But Codal has not been able to hand over the platform to us now. Harassed and frustrated by Codal's highly unethical business practices, we had to drag them to court in Chicago in 2019)."

¶ 9    Another exhibit showed that, in July 2019, Same Condition's Twitter account replied to various tweets from Codal's Twitter account. In some of these replies, Same Condition remarked that Codal had "cheated" the company, delivered a "half-cooked buggy platform," provided a "nightmare experience," and overall exhibited "[v]ery unethical business practices." In addition to Codal being tagged in the replies, other companies' Twitter accounts were as well. Additional exhibits showed that, in July 2019, Kumar left similarly negative reviews on Codal's Google page, its Better Business Bureau page, and its Clutch page.

¶ 10    Same Condition and Kumar subsequently filed their own answer and affirmative defenses to Codal's counterclaims. In that filing, Same Condition and Kumar admitted that the referenced social media posts had been posted by them, but they denied that any of the posts contained false statements. As the litigation proceeded from 2019 to 2020, the parties conducted discovery.

¶ 11    In February 2020, Same Condition and Kumar filed a motion for an extension of time to answer Codal's requests to admit. The next month, Codal filed a response opposing their motion for an extension of time and to expedite the circuit court's ruling on the motion. In Codal's response, it observed that Same Condition and Kumar had "embarked on an extensive campaign of posting new defamatory content on social media." Codal highlighted that Same Condition changed its Twitter biography to state that it was "[a] Global Health Community that failed to start because @GoCodal messed up our software product. Seeking justice from Chicago-based #Codal and its CEO @kevalbaxi." Additionally, Codal asserted that Same Condition and Kumar had contacted Codal's former clients, potential clients, past employees, and current employees in order to defame Codal and Baxi, its chief executive officer. Codal attached to its response a declaration from Baxi, who averred to the various actions allegedly taken by Same Condition and Kumar. Baxi pointed out that Same Condition and Kumar's social media campaign included them "making

negative and disparaging comments on all of Codal's online postings." Baxi noted that Codal's "online presence [was] critical" to its business and asserted that Same Condition and Kumar's "actions have prevented Codal and [him]self from maintaining said online presence as we are unable to issue necessary press release, important marketing materials, or post even unrelated social media content as [Same Condition and Kumar] respond to any online post with negative and defaming comments." Baxi further highlighted a chronological list of the social media posts and comments from Same Condition and Kumar directed at Codal and Baxi that he and his company had created. According to that list, Same Condition and Kumar had commented about Codal and Baxi 69 times from February 17, 2020, to March 2, 2020, on Twitter, LinkedIn, and Google.

¶ 12    For example, in a two-day stretch from February 17 to February 18, 2020, Same Condition tweeted the following from its account:

"@gocodal @mobileappdaily We had a very bad experience with @Gocodal. They charged us hefty amounts and 3 years have passed, wanted to dump a buggy half cooked website on us. We refused and dragged them to court. #Codal"

"@gocodal @AppDevFirms Codal did not complete our project, whatever the software they built for us, was half cooked and full of problems. We had a horrible experience with them. #Codal"

"@AppDevFirms @gocodal @hyperlinkinfo @hashrocket @palantir @orbiteers @myplanet @prometsource @Realnets @educoweb @cre8inc Codal NOT only failed to develop our software platform properly, they usurped our money and

refused to listen to our concerns. Left with no option, we had to drag #Codal to a Chicago court. Now Codal playing legal games rather than addressing the issues."

"@AppDevFirms @gocodal @hyperlinkinfo @hashrocket @palantir @orbiteers @myplanet @prometsource @Realnets @educoweb @cre8inc See how #Codal is playing out now! They Blocked us on Twitter. Sir @gocodal, you need to listen to the grievances of your customer rather than blocking. Bad business ethics!"

"My struggle with @goCodal company. They have failed to deliver my product. Codal is technically incompetent. @BuiltinChicago @CrainsChicago @Midwest_loT @1871Chicago @BigTimeSoftware Note: #Codal has blocked our twitter handle."[1]

"@gocodal @Ontraport @buffer @SproutSocial @ahrefs @convertflow @GMktgPlatform @semrush @hotjar @ActiveCampaign Months have passed since we wrote this, but #Codal company of Chicago (@gocodal) refuses to accept that they were not able to provide IT solutions that agreed scope of work required. Surprised that unfair business practices continue. @ExecClubChicago @AnnCDwyer @ChiTribBiz"

Also on February 18, 2020, Kumar posted a Google Review about Codal stating the following:

"We are having a very bad experience with Codal company. We hired Codal about 3 years back to develop a healthcare platform. Time has passed, but Codal has not been able to develop our product so far in a satisfying manner. They were just

---

[1]This Tweet appeared to include a video, as well.

interested in getting money from us, but in return tried to dump a faulty, buggy and half cooked software on us. Naturally, we refused to accept that. They do not have technical skills to complete our product. Codal has not been a good company to work with as they kept promising one thing, but delivered something else. At some stage, they stopped communicating with us. We had to drag Codal to the court."

Similarly, on February 18, 2020, Kumar posted on LinkedIn stating the following:

"Our Bad experience with Codal (Codal Inc.) Codal is a Chicago-based I.T. company, headed by Keval Baxi [@kevalbaxi]. Our health startup had a really bad experience with Codal. They have usurped our money, but failed to develop the software platform. Their technical incompetence was such that when things came to a passe, they even tried to dump a half cooked buggy website on us. We refused to accept that. We had to drag Codal to a local Chicago court. Here too, rather than accepting pitfalls and trying to fix them, Codal is playing legal tactics.

I spoke to one of the employees at Codal (and the recording is with us, our attorney will present that in court at appropriate time), and the guy said: 'You are not alone. Codal has played unfairly with some other clients too. They take up the project and when faced with technical roadblocks, they start buying time and become non responsive.'

All that glitters is not gold. Codal is a classical example. Located in downtown office, they look big, but then indulge in unfair business practices. Another company in Chicago area contacted me recently when they came to know about we filing a lawsuit against Codal.

"If any other person/firm had similar experience, pl mail@samecondition.com"

¶ 13    On March 24, 2020, the circuit court granted Same Condition and Kumar's motion for an extension of time to answer Codal's requests to admit but did not discuss any of their online posts. Four months later, Codal sought a preliminary injunction against Same Condition and Kumar to prohibit them from harassing Codal and its employees as well as to require them to remove all defamatory content they had posted on social media since the lawsuit began. In the motion, Codal asserted that Same Condition and Kumar had continued posting "harassing and disparaging comments" to Codal's Twitter account and the accounts of Codal's employees. Additionally, Codal stated that they had created a website—codalsucks.blogspot.com—wherein Same Condition and Kumar further posted defamatory content about Codal and Baxi.

¶ 14    Codal attached to its motion an updated chronological list of the social media posts and comments from Same Condition and Kumar directed at Codal and Baxi and multiple posts from the blog. In one, titled "Codal Sucks," which was apparently written by Kumar because the post begins "[m]y name is Kumar," the post said that "Codal company and its CEO Keval Baxi are very unethical," that they "did not realize that he and his company essentially bled our start up to death," and that they were "playing tactics" in court. According to the post, "this show[ed] their business values and ethics. Will not an ethical business try to address the client's grievance rather than playing mischief? So, this is Codal for you all to see."

¶ 15    In another post, titled "Codal works with United, Yet Deceived A Start up-Why and How?", the post stated: "Readers familiar with our story must be wondering that Chicago-based Codal company that boasts of working with the giants like United Airlines, Pepsi, Motorola and Quickbooks, how come it dumped and cheated a very small start up enterprise like ours!" Codal

also attached an affidavit from Clare Bittourna, one of its employees, who averred that she had answered a question on the website Quora in April 2019. But Bittourna asserted that, in June 2020, Kumar responded to that same question with a "lengthy rant" about Codal and that, later in the day, Kumar posted from Same Condition's Twitter account and tagged Bittourna in the post with her legal given and surname. Bittourna stated that these actions made her feel "extremely uncomfortable." Lastly, Codal attached an affidavit from Baxi, who recounted Kumar's actions and asserted:

> "At this point, I feel as if I am being personally monitored and tracked. As ridiculous as this may sound, having every post, press release, and blog article from my business attacked, our clients being contacted at all hours of the day, and my staff harassed, it is not only becoming exhausting to monitor, but it is now moving into the territory of a security concern."

¶ 16 On July 10, 2020, the parties appeared before the circuit court on multiple motions of Codal's, including its motion for a preliminary injunction. Following the hearing, the court struck Codal's motion without prejudice. The hearing was conducted via Zoom videoconference, and there is no report of proceedings in the record on appeal from that hearing. However, Codal claimed in a later filing that, although the court denied its motion, the court nevertheless "instructed" Same Condition and Kumar's attorney "to request that [they] refrain from their defamatory and disparaging practices."

¶ 17 Two weeks later, Codal filed a motion for a temporary restraining order against Same Condition and Kumar to enjoin them from harassing Codal and Codal's employees and from repeating their defamatory, disparaging, and deceptive practices against Codal. In the motion, Codal observed that, in the July 10, 2020, hearing, the circuit court instructed Same Condition and

Kumar's attorney to warn Kumar that his behavior would not be tolerated. Yet, according to Codal, no more than two hours later, Kumar posted another defamatory tweet about Codal. In that tweet, a copy of which was attached to Codal's motion, Same Condition, whose Twitter name was now "Startup cheated by Codal," stated: "Credibility is the most important thing in business. Codal may boast of serving big clients like @pepsi, @united, @QuickBooks and @MotorolaUS, but we know @gocodal ruined us by eating away our money and leaving us on the street. Codal's CEO @Kevalbaxi! we need justice." The timestamp from the tweet was July 10, 2020, at 4:18 p.m.

¶ 18    On October 2, 2020, the circuit court entered an order that, in part, denied Codal's motion for a temporary restraining order. But in paragraph 6 of that order, the court ordered that "Pursuant to the Court's inherent authority to manage its cases, Counter-Defendant, Same Condition and Munish Kumar, are prohibited from making any additional posts online regarding Codal. This order is final and appealable pursuant to [Illinois Supreme Court Rule 304(a)]." There is no report of proceedings in the record on appeal from that court date and nothing in the record showing the court made any factual findings when prohibiting Same Condition and Kumar in this manner. In the order, the court also granted Codal leave to file second amended counterclaims.

¶ 19    In Codal's second amended counterclaims, it presented the history of the case, from when the parties entered into the contract and to when Same Condition and Kumar began posting online about its performance under the contract on such platforms as LinkedIn, Facebook and Twitter. Codal attached to its second amended counterclaims an updated chronological list of the social media posts and comments from Same Condition and Kumar directed at it and Baxi. Seven posts, all from Same Condition's Twitter account, were posted after the parties' July 10, 2020, hearing.

¶ 20    Codal's second amended counterclaims against Same Condition and Kumar now included 10 counts. Count I was for breach of contract, Count II was for unjust enrichment and Count III

was for *quantum meruit*, the latter two as alternatives to Count I. Counts I through III were directed at Same Condition. Count IV was for defamation *per se*, and Count V was for defamation *per quod*. Under Count V, Codal asserted that, through a variety of social media and review platforms, Same Condition and Kumar had repeatedly, and with the intent to cause financial harm, published false statements about its performance under the contract and its business integrity. Codal claimed that Same Condition and Kumar knew their statements were false or, at the very least, acted in reckless disregard of the truth. According to Codal, because the statements were directed at a wide audience, Same Condition and Kumar's false statements had caused it to suffer lost profits, irreparable harm, loss of goodwill, and loss of business expectations and relations for which it had no adequate remedy at law or equity. Codal posited that, absent injunctive relief, Same Condition and Kumar's continued defamation and disparagement would likely cause additional irreparable harm, loss of goodwill, and loss of business expectations and relations. Count VI was for a violation of the Deceptive Practices Act (815 ILCS 510/1 *et seq.* (West 2018)), and Count VII was for commercial disparagement. All four of these counterclaims were directed at both Same Condition and Kumar. The new counterclaims were Count VIII, which was for defamation *per se* against Kumar, Count IX, which was for defamation *per se* against Same Condition, and Count X, which also was for defamation *per se* against Same Condition. Among Codal's requested relief was a permanent injunction barring Same Condition and Kumar from publishing additional false statements about Codal. In Same Condition and Kumar's answer to Codal's second amended counterclaims, they admitted the social media posts were genuine but denied that any of the statements were false.

¶ 21 On October 28, 2020, Same Condition and Kumar appealed the circuit court's injunctive order that prohibited them from making any additional posts online regarding Codal. While Same

Condition and Kumar's appeal was pending, the parties continued litigation in the circuit court. In March 2021, Same Condition and Kumar's attorneys requested leave to withdraw from the case. In conjunction with the motion, one of Same Condition and Kumar's attorneys e-mailed Codal's attorneys and stated that she was transferring the case file to Kumar. However, the attorney noted that there were several documents that Codal produced designated "Attorneys Eyes Only," even though the circuit court never entered a protective order in the matter. Same Condition and Kumar's attorney noted that, as a courtesy, she and their other attorneys had not shared those documents with Kumar. Same Condition and Kumar's attorney concluded the e-mail asking Codal's attorneys if they intended to seek entry of a protective order so the documents would be properly designated.

¶ 22    The following month, the circuit court granted Same Condition and Kumar's attorneys leave to withdraw in the case, and granted Same Condition and Kumar 21 days to obtain new counsel. Additionally, the court ordered Same Condition and Kumar's former attorneys to refrain from sharing any documents produced by Codal in the course of the litigation. The court added that, to the extent any documents had previously been shared with Kumar, his former attorneys were to direct Same Condition and Kumar "to destroy any documents in their possession, custody, or control related to this case." The court also ordered that, to the extent any original documents had been shared with Kumar or Same Condition, their former attorneys were required to direct Kumar and Same Condition "to return such original documents in their possession, custody, or control related to this case to [their former attorneys]." Lastly, the court ordered Same Condition and Kumar to certify compliance with the aforementioned mandates within 21 days.

¶ 23    In May 2021, Codal filed an emergency motion to enforce the circuit court's prior order and for sanctions because Same Condition and Kumar had not yet certified destruction or return

of Codal's documents, and had not yet obtained new counsel. Codal set a hearing for the emergency motion for the following week and provided proper notice of the motion to Kumar via his e-mail address. At that hearing, neither Same Condition nor Kumar appeared despite Kumar filing a *pro se* response. As a result, the circuit court continued the hearing on the motion to a subsequent date. The court also ordered Same Condition, Kumar and their former attorneys to appear. At the subsequent hearing date, while Same Condition and Kumar's former attorneys appeared, they themselves failed to appear again. The court continued the hearing on Codal's emergency motion until June 2021. Given Same Condition and Kumar's failure to appear, Codal filed a motion to dismiss Same Condition's complaint for want of prosecution and argued that this was part of a larger pattern of delay by them. Codal provided proper notice of the motion to Kumar via his e-mail address.

¶ 24    On June 21, 2021, while Codal's motions were pending, we filed an opinion in Same Condition and Kumar's appeal. See *Same Condition, LLC v. Codal, Inc.*, 2021 IL App (1st) 201187. Initially, we observed that the circuit court's injunctive order that prohibited Same Condition and Kumar from making any additional posts online regarding Codal was a content-based restriction, meaning it was presumptively unconstitutional and subject to strict-scrutiny review. *Id.* ¶¶ 33-34. We next found that the court's order failed strict-scrutiny review because, even if there was a compelling government interest in prohibiting Same Condition and Kumar from posting about Codal online, the court's blanket and indefinite order was not narrowly tailored to achieve that interest. *Id.* ¶ 36. Although Codal raised several arguments as to why the court's content-based restriction was necessary, we rejected all of those arguments. *Id.* ¶¶ 38-49. As a result, we agreed with Same Condition and Kumar that the court's injunctive order constituted a prior restraint in violation of their right to free speech under the United States and Illinois

Constitutions. *Id.* ¶ 50. Consequently, we vacated paragraph 6 of the circuit court's order. *Id.* ¶¶ 50-54.

¶ 25    A week after we decided Same Condition and Kumar's appeal, the circuit court held a hearing at which Same Condition and Kumar appeared without counsel. Kumar indicated to the court that he and Same Condition would be proceeding in the case without counsel. Following the hearing, the court entered an order in which it found that, while Kumar could represent himself against Codal's counterclaims, he could not represent Same Condition. The court also ordered Same Condition and Kumar to certify the destruction of Codal's documents that were in their possession and continued the matter for status on a potential settlement and Same Condition retaining legal counsel. At the next court date, Same Condition and Kumar failed to appear. In an order, the court continued the matter for two weeks, noted that settlement talks had failed and warned Kumar that Same Condition's claims against Codal could be dismissed for want of prosecution if he did not appear at the subsequent hearing. At the next hearing, Same Condition and Kumar again failed to appear. As a result, the court set a schedule for Codal to file its motion for summary judgment. The court again warned Same Condition and Kumar that their continued failure to appear could result in Same Condition's claims being dismissed for want of prosecution and an order of default or summary judgment being entered against Kumar on Codal's counterclaims. The court instructed that a copy of the order be sent to Kumar's last known e-mail address. Codal's emergency motion to enforce the circuit court's destruction order and for sanctions was eventually denied.

¶ 26    In September 2021, Codal filed its motion for summary judgment, wherein it argued that Same Condition's claims of breach of contract, fraud and unjust enrichment failed as a matter of law. First, Codal asserted that Same Condition's breach of contract claim failed because Codal

provided its software development services for one year, which is all the contract between it and Same Condition required, and Same Condition suffered no damages. Second, Codal posited that Same Condition's fraud claim failed because Same Condition was seeking to enforce contractual promises by couching them as misstatements that it allegedly failed to uphold. And third, Codal contended that Same Condition's unjust enrichment claim failed because there was a contract that controlled the parties' relationship.

¶ 27     Additionally, Codal asserted that the circuit court should grant summary judgment in its favor on its counterclaims. First, Codal posited that judgment was proper on its breach of contract counterclaim where Same Condition failed to pay it according to the contract. Further, Codal argued that Same Condition and Kumar had continually defamed it on social media and aggressively targeted its clients and employees in order to inflict as much damage as possible. As such, Codal contended that Same Condition and Kumar's actions constituted various forms of defamation, commercial disparagement and deceptive business practices. Concerning the defamation claims, Codal asserted that Same Condition and Kumar's hundreds of posts online mostly constituted defamation *per se*, but if they did not, they were nevertheless defamation *per quod*. Codal sought, in part, as relief: (1) an order from the circuit court finding that Kumar's statements on social media and numerous other online forums were defamatory, commercially disparaging and violative of the Deceptive Practices Act (815 ILCS 510/1 *et seq.* (West 2018)); (2) an injunction requiring Same Condition and Kumar to "remove all published statements about Codal" and to "refrain from publishing similar statements about Codal in the future;" and (3) an award of its attorney fees, expenses and costs incurred in connection with the litigation. Codal provided proper notice of the motion to Kumar via his e-mail address.

¶ 28    In November 2021, after Same Condition and Kumar failed to respond to Codal's motion within the time period prescribed by the circuit court, Codal filed a motion for judgment. In the motion, Codal posited that the case clearly had not "slipped" Same Condition and Kumar's mind, as Kumar had continued to publish allegedly defamatory content about it on Twitter through November 2021. Codal highlighted the various instances in the litigation in which Same Condition and Kumar had defied court orders and requested the court utilize its inherent power to grant Codal judgment on its motion for summary judgment. Codal attached to its motion 29 recent tweets from Same Condition's Twitter account where Same Condition discussed Codal. For example, on November 1, 2021, Same Condition tweeted: "Good business have strong customer services values. However, the way Chicago based Codal (@gocodal) hemorrhaged our start up, our faith has been shattered. 4 years down the lane, we r still not able to recover. DM us to know details" after which Same Condition tagged various other Twitter accounts. The following day, Same Condition tweeted: "#Codal (@gocodal) is happy to announce new location of its office and its coverage at @cbschicago. Codal made money on our start up: charged huge amounts, and DID NOT develop our product. Codal dumped us, while it is gaga about its expansion and growth. Ethical business?" Codal provided proper notice of the motion to Kumar via his e-mail address. Later that month, the circuit court held a hearing on Codal's motion for summary judgment, at which Same Condition and Kumar failed to appear. There is no transcript of that hearing in the record on appeal.

¶ 29    On December 7, 2021, the circuit court entered a judgment order on Codal's motion for summary judgment. Initially, the court reviewed the recent history of the case, including the many instances of Same Condition and Kumar not making required court appearances. Afterward, the court granted summary judgment in favor of Codal on Same Condition's breach of contract, fraud

and unjust enrichment claims. The court also granted summary judgment in favor of Codal on its breach of contract, defamation *per quod* and commercial disparagement counterclaims (Counts I, V and VII, respectively). Given its resolution on Codal's breach of contract counterclaim, the court found Codal's unjust enrichment and *quantum meruit* counterclaims (Counts II and III) were moot. However, the court denied summary judgment on Codal's Deceptive Practices Act (815 ILCS 510/1 *et seq.* (West 2018)) counterclaim (Count VI) as well as its defamation *per se* counterclaims (Count IV and Counts VIII through Count X) "because there [was] no evidence that it was accused of committing a crime or that [it had] been prejudiced in its business." The court also concluded that, while "Kumar's statements on social media and various other online forums [were] defamatory, Codal [was] not entitled to receive damages because [the] court [had] not been presented with evidence of lost earnings, future lost earning capacity, and other lost business or economic opportunities that it suffered or [was] likely to suffer as a result of the defamatory statement." Though the court did not grant Codal any damages due to Same Condition and Kumar's defamatory statements, the court did award Codal $30,750 in expectation damages for Same Condition's breach of contract and required Same Condition and Kumar to pay Codal's attorney fees, expenses and costs pursuant to Section 10.2 of their agreement in amount to be proved through subsequent petitions to the court.

¶ 30    In addition, in paragraph VIII of the judgment order, the circuit court entered the following injunctive relief in favor of Codal and against Same Condition and Kumar:

"(a) Dr. Kumar and/or Same Condition must remove all published statements about

Codal and/or its clients, customers, employees, agents, principals, representatives,

affiliates, independent contractors, officers, directors, managers, members,

shareholders, attorneys, subsidiaries, insurers, heirs, successors, and assigns within thirty (30) days of this Order;

(b) Dr. Kumar and/or Same Condition must assign the domain name Codalsucks.blogspot.com to Codal within thirty (30) days of this Order; and

(c) Dr. Kumar, Same Condition, and any of its employees, agents, principals, representatives, affiliates, independent contractors, officers, directors, managers, members, shareholders, attorneys, subsidiaries, insurers, heirs, successors, and assigns must refrain from publishing similar statements about Codal and/or its clients, customers, employees, agents, principals, representatives, affiliates, independent contractors, officers, directors, managers, members, shareholders, attorneys, subsidiaries, insurers, heirs, successors, and assigns in the future."

The court concluded its order by setting a schedule on Codal's petition for attorney fees, expenses and costs.

¶ 31 Two weeks later, Codal filed its fee petition and requested approximately $311,000. In mid-January 2022, the circuit court held a hearing on Codal's fee petition, which Same Condition and Kumar attended, apparently still without counsel.[2] On January 24, 2022, the court awarded Codal approximately $309,000 in attorney fees, expenses and costs.

¶ 32 The following month, Codal filed a joint motion to enforce the circuit court's December 7, 2021, judgment order and a petition for rule to show cause, which it later amended. As to the motion to enforce, Codal observed that, as of the date of filing, Same Condition and Kumar had not removed "any" of the published statements about it identified in the court's judgment order or

---

[2] Prior to January 19, 2022, Judge Diane M. Shelley presided over the case. But, beginning on January 19, 2022, Judge Thomas More Donnelly began presiding over the case.

assigned it the domain name. As to the petition for rule to show cause, Codal requested that the court issue a rule requiring Same Condition and Kumar to appear and show cause, if any, as to why they should not be held in contempt of court for their failure to obey the court's judgment order.

¶ 33 On February 23, 2022, Same Condition and Kumar, now being represented by counsel, filed a "Motion to Vacate Judgment or, in the Alternative, Reconsider and Reopen Proofs and Supporting Memorandum," seeking pursuant to section 2-1203 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1203 (West 2018)) to have the circuit court vacate its summary judgment order and its judgment on Codal's fee petition, or in the alternative, reconsider those judgments and reopen proofs. In relevant part, Same Condition and Kumar argued that the court's injunction that prohibited them from publishing certain statements about Codal in the future was unconstitutional and directly contradictory to the opinion this court issued in *Same Condition*, 2021 IL App (1st) 201187. As relief, Same Condition and Kumar sought to have this aspect of the judgment order either vacated or reconsidered. Furthermore, Same Condition and Kumar posited that the court violated their constitutional "access-to-courts rights" because it had directed them "to destroy all documents related to the case while the case was pending and before summary judgment." Due to this mandate, Same Condition and Kumar asserted that they "had nothing to defend themselves with other than writing letters to the Court begging that the Court understand their point of view." Although in the introduction to the motion, Same Condition and Kumar asserted that they were challenging the court's order on Codal's fee petition, they made no direct arguments as to the impropriety of that order. Same Condition and Kumar attached various exhibits to their motion, including various letters written by Kumar directed toward Judge Shelley, wherein

he made various comments about his case, his lack of funds and his inability to obtain counsel. These letters were dated July 13, 2021, August 29, 2021, August 31, 2021, and January 1, 2022.

¶ 34    Two weeks later, Same Condition and Kumar responded to Codal's joint motion to enforce and petition for rule to show cause, arguing that they did not willfully or contumaciously disregard the circuit court's December 7, 2021, judgment order. Further, Same Condition and Kumar posited that the judgment order was unenforceable as a violation of their constitutional right to free speech. Moreover, they asserted the order was unenforceable because they had been denied access to all documents in the case, thereby preventing them from meaningfully participating in the litigation. As a result, Same Condition and Kumar contended that Codal's motion and petition should be denied. Thereafter, Codal responded to Same Condition and Kumar's motion to vacate the judgment and contended, in part, that their motion was time-barred because they failed to challenge the circuit court's summary judgment order within 30 days. Codal asserted that, even if the court were to entertain the merits of Same Condition and Kumar's motion to vacate, they significantly misrepresented the record and case law.

¶ 35    Ultimately, on April 18, 2022, the circuit court entered a memorandum opinion and order on the parties' various motions. Concerning Same Condition and Kumar's argument that the court's injunction was unconstitutional and contradictory to the opinion this court issued in *Same Condition*, 2021 IL App (1st) 201187, the court noted that neither the United States Supreme Court nor Illinois Supreme Court had addressed the open question of the constitutionality of a posttrial injunction barring the repetition of statements judicially adjudicated to be defamatory. Because this was an " 'open question,' " the court concluded that Same Condition and Kumar could not show the court erred in applying existing law. Concerning Same Condition and Kumar's argument that the court violated their constitutional "access-to-courts rights," the court highlighted that it

only ordered the destruction of documents produced by Codal during the course of litigation and not all documents related to the case. As such, the court concluded that Same Condition and Kumar failed to present any legitimate argument showing the order was improper. Consequently, the court denied Same Condition and Kumar relief.

¶ 36    As to Codal's joint motion to enforce and petition for rule to show cause, the court found *prima facie* evidence that Same Condition and Kumar willfully disregarded the court-ordered injunction, thus constituting indirect civil contempt. The court therefore concluded that it had to hold an evidentiary hearing for Same Condition and Kumar to show cause, if any, as to why they should not be adjudged guilty of civil contempt for failing to obey the court's order. As such, the court set a hearing for such an explanation, and it continued Codal's motion to enforce.

¶ 37    On May 16, 2022, Same Condition and Kumar filed a notice of interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a) (eff. eff. Nov. 1, 2017) challenging the circuit court's April 18, 2022, order, in which it "refused to modify or dissolve the injunction entered on December 7, 2021." Beyond the notice of appeal, there is nothing in the record on appeal following the circuit court's April 18, 2022, memorandum opinion and order.

¶ 38                                    II. ANALYSIS

¶ 39                                    A. Jurisdiction

¶ 40    Before addressing Same Condition and Kumar's contentions on appeal, we first must address our jurisdiction in this appeal. "A reviewing court must ascertain its jurisdiction before proceeding in a cause of action." *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009). Same Condition and Kumar appealed to this court pursuant to Illinois Supreme Court Rule 307(a) (eff. Nov. 1, 2017). Under Rule 307(a)(1), a party in the circuit court may appeal as of right an interlocutory order of the circuit court "granting, modifying, refusing, dissolving, or

refusing to dissolve or modify an injunction." *Id.* "Rule 307(a)(1) permits interlocutory appeals from four types of orders: (1) orders that deny (*i.e.*, refuse) injunctions; (2) orders that create (*i.e.*, grant) injunctions; (3) orders that change the effects of (*i.e.*, modify or dissolve) existing injunctions; and (4) orders that perpetuate the effects of (*i.e.*, refuse to modify or to dissolve) existing injunctions." *Craine v. Bill Kay's Downers Grove Nissan*, 354 Ill. App. 3d 1023, 1025 (2005). To this end, Same Condition and Kumar posit that they appealed the circuit court's denial of their motion to vacate the injunction, which was an order that perpetuated the effect of the existing injunction. See *Zitella v. Mike's Transportation, LLC*, 2018 IL App (2d) 160702, ¶ 13 ("Under Rule 307, a motion to vacate an injunction is equivalent to a motion to dissolve an injunction.").

¶ 41     Codal, however, asserts that we lack jurisdiction in this appeal for two reasons, one that it raises in its appellee brief and the other it raises through a motion to dismiss filed in this court. First, we will address the issue Codal raises in its brief, which is that the circuit court lacked jurisdiction to entertain Same Condition and Kumar's February 23, 2022, "Motion to Vacate Judgment or, in the alternative, Reconsider and Reopen Proofs and Supporting Memorandum," which challenged the court's injunctive relief. In turn, Codal posits that Same Condition and Kumar could not have appealed from that order of the circuit court, resulting in our lack of jurisdiction.

¶ 42     In Illinois, there are three types of injunctive relief: a temporary restraining order, a preliminary injunction and a permanent injunction. *County of Boone v. Plote Construction, Inc.*, 2017 IL App (2d) 160184, ¶ 27. A temporary restraining order is meant to be in place for a brief period of time and is extraordinary remedy that can be issued without notice. *Id.* ¶¶ 27-28. It is an order meant to preserve the status quo until the circuit court can hold a hearing to determine if it

should grant a preliminary injunction. *Id.* In turn, a preliminary injunction is an order entered by the court after notice and a hearing. *Id.* ¶ 28. Such an order is not meant to be brief because its purpose is to provide an injured party relief and maintain the status quo until a trial on the merits. *Id.* Although a temporary restraining order and preliminary injunction are different in various manners, they do have similarities. *Santella v. Kolton*, 393 Ill. App. 3d 889, 903 (2009). Both are granted to preserve the status quo, and they conclude no rights because they are "limited in duration" and do not "extend[] beyond the conclusion of the action." *Id*. In this regard, both are considered interlocutory injunctions. *Id.* The third and final type of injunctive relief is a permanent injunction, which is an order "of unlimited duration" that " 'alters the status quo,' meaning that it adjudicates rights between the interested parties." *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 222 (2000). A permanent injunction may only be entered "after the party seeking the injunction demonstrates at 'a hearing on the merits' the requisite elements for permanent injunctive relief." *In re Marriage of Seffren*, 366 Ill. App. 3d 628, 637 (2006).

¶ 43    In this case, there is no doubt that the circuit court entered a permanent injunction, as opposed to an interlocutory injunction, against Same Condition and Kumar. In Codal's motion for summary judgment, it contended that the repeated postings from Same Condition and Kumar were defamatory and provided evidence supporting that contention. In granting Codal's motion, the circuit court found that, based on the evidence presented in Codal's motion for summary judgment including the attached exhibits, the online postings by Same Condition and Kumar were "defamatory." In other words, the court determined that Same Condition and Kumar's barrage of online posts "tend[ed] to cause such harm to the reputation of another that it lower[ed] that person in the eyes of the community or deter[ed] third persons from associating with [it]." *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 87 (1996) (defining when a statement is considered

"defamatory"). As the court made an adjudication that Same Condition and Kumar had made defamatory statements following the presentation of evidence, its order barring Same Condition and Kumar from publishing similar statements about Codal "in the future" was of an unlimited duration and altered the status quo of the parties. See *Skolnick*, 191 Ill. 2d at 222. Therefore, the court entered a permanent injunction. See *id.* It is true that the court's judgment order on Codal's motion for summary judgment did not dispose of all pending claims, as the court denied Codal summary judgment on its Deceptive Practices Act (815 ILCS 510/1 *et seq.* (West 2018)) counterclaim (Count VI) as well as its defamation *per se* counterclaims (Counts IV, VIII, IX and X). But it is immaterial that the court's injunctive relief did not dispose of the entire litigation as "[w]hether the injunction disposes of the entire litigation is not determinative of its permanent or preliminary nature." *Steel City Bank v. Village of Orland Hills*, 224 Ill. App. 3d 412, 417 (1991). As such, the mere fact that Codal had multiple counterclaims still pending and unresolved did not preclude the court's injunction from being permanent.

¶ 44    A permanent injunction is a final order. *Skolnick*, 191 Ill. 2d at 222. This is important for two critical reasons. First, being a final order determines the applicable Illinois Supreme Court Rules conferring jurisdiction on the appellate court for review. "[A] permanent injunction is a final order, appealable only pursuant to Supreme Court Rules 301 or 304." *Id.* Rule 301 provides generally that all final judgments in a civil case are appealable as of right. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). However, Rule 304 modifies Rule 301 in situations where there are multiple parties or multiple claims for relief in an action and the circuit court enters a final judgment as to one or more, but fewer than all, of the parties or claims. Ill. S. Ct. R. 304 (eff. Mar. 8, 2016). Under these circumstances, the circuit court must make "an express written finding that there is no just reason for delaying either enforcement or appeal or both" in order to confer jurisdiction on the appellate

court unless it is a special judgment or order enumerated in Rule 304(b), of which permanent injunctions are not listed. *Id.*

¶ 45 The procedural posture of this case falls squarely within Rule 304's ambit, specifically subsection (a) because a permanent injunction is not a special judgment or order enumerated in subsection (b). Under Rule 304(a), the circuit court may make the required special finding to confer jurisdiction upon this court "at the time of the entry of the judgment or thereafter on the court's own motion or on motion of any party." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Once the court makes such a finding, the party appealing must file its notice of appeal 30 days of the final judgment appealed from or within 30 days of the circuit court's order disposing of a final timely postjudgment motion. Ill. S. Ct. Rs. 303(a) (eff. July 1, 2017); 304(a) (eff. Mar. 8, 2016). "In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

¶ 46 By concluding that a permanent injunction is appealable under Rule 304, our supreme court clearly contemplated that a permanent injunction may be a final judgment as to one or more, but fewer than all, of the parties or claims in an action. See *id.* For example, in *Statistical Tabulating Corp. v. Hauck*, 5 Ill. App. 3d 50, 50-51 (1972), as part of a lawsuit, the circuit court permanently enjoined the defendant from competing with the plaintiff's business. However, despite the permanent injunction, there were still other pending issues in the circuit court after the court provided the injunctive relief, including claims related to specific performance and an accounting. *Id.* at 51. Unhappy with being barred from competing with the plaintiff, the defendant appealed the court's injunction pursuant to Illinois Supreme Court Rule 307 and reasoned that, because the

injunction did not dispose of the entire litigation, the injunction had to be considered interlocutory rather than permanent. *Id.* The appellate court disagreed and noted that, based on the nature of the relief, it was clear that the court's injunction was permanent and thus, "a final judgment on the issue which is the subject of the injunction." *Id.* This court highlighted that, given the pending claims still needing to be resolved in the circuit court, the only way for the appellate court to have jurisdiction over the matter was pursuant Illinois Supreme Court Rule 304, but that required a special finding from the circuit court. *Id.* Because the circuit court made no special finding, the appellate court found that it had no jurisdiction to hear the defendant's appeal of the permanent injunction and dismissed the case. *Id.* at 51-52.

¶ 47    The second important reason that a permanent injunction is a final order is that, as a final order, a permanent injunction is subject "to the 30-day limits for filing posttrial motions *** under the Code of Civil Procedure." *Sola v. Roselle Police Pension Board*, 2012 IL App (2d) 100608, ¶ 13. Section 2-1203(a) of the Code (735 ILCS 5/2-1203(a) (West 2018)) provides that, "[i]n all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." The "judgment" referred to in this section of the Code is a final judgment. See *Hawes v. Luhr Brothers*, 212 Ill. 2d 93, 105-06 (2004). In other words, once the circuit court enters a permanent injunction, *i.e.*, a final judgment, the parties have 30 days to file their postjudgment motion challenging that injunction. See *Affordable Housing Preservation Foundation v. Wiiams*, 375 Ill. App. 3d 305, 307-09 (2007) (concluding that the defendant filed a proper motion challenging the circuit court's entry of a permanent injunction where, in part, he did so "within 30 days of the circuit court's entry of [the] injunction").

¶ 48    There is an exception to this general rule, as the circuit court has "jurisdiction, or inherent power, to modify or dissolve [its] own injunctions after the lapse of the 30-day limit." *Sola*, 2012 IL App (2d) 100608, ¶ 13. The "court's jurisdiction in these circumstances, however, is limited to determining whether changes in the applicable law or facts since the rendition of the judgment warrant a modification of the injunction's terms." *Id.* The court's authority "does not include the power to inquire into the propriety of the judgment's procedural and substantive aspects as to conditions existing when the judgment was entered." *Id.* "The fact that the [circuit] court has inherent power to enforce its decree and to modify or revoke the injunction for equitable purposes due to changed conditions *** does not import a lack of finality." *Bundy v. Church League of America*, 125 Ill. App. 3d 800, 805 (1984). And so litigants are limited to 30 days to challenge a permanent injunction. *American Institute of Real Estate Appraisers of National Association of Realtors v. National Real Estate Association, Inc.*, 191 Ill. App. 3d 867, 869 (1989).

¶ 49    In the instant case, the circuit court entered its judgment order on Codal's motion for summary judgment, which included the permanent injunction subject to this appeal, on December 7, 2021. Same Condition and Kumar did not file any postjudgment motion challenging that injunction until February 23, 2022, or 78 days later, when they filed their "Motion to Vacate Judgment or, in the alternative, Reconsider and Reopen Proofs and Supporting Memorandum," seeking, in part, to have the circuit court vacate its permanent injunction. However, as discussed, that motion was untimely because it was not filed within 30 days of the court entering the permanent injunction. See 735 ILCS 5/2-1203(a) (West 2018); *Sola*, 2012 IL App (2d) 100608, ¶ 13.

¶ 50    The consequence of Same Condition and Kumar's failure to timely file a postjudgment motion challenging the circuit court's permanent injunction is that the court had no jurisdiction to

alter that injunction based upon Same Condition and Kumar's motion. See *Sola*, 2012 IL App (2d) 100608, ¶ 13. Therefore, insofar as the court denied Same Condition and Kumar's motion challenging the permanent injunction, the court was without jurisdiction to do so. See *Bundy*, 125 Ill. App. 3d at 806-07 (concluding that the circuit court loses jurisdiction to modify a permanent injunction after 30 days unless the court uses its inherent authority, which must be based upon changes in the applicable law or facts that have occurred since the entry of the injunction). And when Same Condition and Kumar filed their notice of interlocutory appeal from that April 18, 2022, order under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), they appealed from an order that the circuit court lacked jurisdiction to enter, which, we in turn, lack jurisdiction to review. See *People v. Bailey*, 2014 IL 115459, ¶ 28 ("[A]n appellate court has no authority to address the substantive merits of a judgment entered by a trial court without jurisdiction"); *Manning v. City of Chicago*, 407 Ill. App. 3d 849, 852 (2011) ("[O]nce the trial court loses jurisdiction, any subsequent orders entered, including a notice of appeal which would vest jurisdiction with our [appellate] court, are not viable.").

¶ 51    In sum, after the circuit court entered the permanent injunction in this case, Same Condition and Kumar had 30 days to either appeal that order under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), due to the circumstances of this case, or to file a postjudgment motion challenging the court's entry of the permanent injunction. They did neither, resulting in our lack of jurisdiction to entertain the merits of their appeal. Accordingly, we must dismiss this appeal. See *In re Marriage of Sanchez & Sanchez-Ortega*, 2018 IL App (1st) 171075, ¶ 20 ("An appeal must be dismissed where [appellate] jurisdiction is lacking.").

¶ 52    Before concluding this appeal, we briefly mention the second jurisdictional issue presented by this appeal, which was based on a motion to dismiss filed by Codal in this court, which we took

with the case. In that motion, Codal contends that we lack jurisdiction because Same Condition and Kumar failed to timely appeal the circuit court's summary judgment order that, in part, contained the injunctive relief. However, because we have concluded that we lack jurisdiction based on the first jurisdictional issue, we need not address this alternative and independent jurisdictional issue. Consequently, we dismiss Codal's motion to dismiss as moot.

¶ 53                              III. CONCLUSION

¶ 54    For the foregoing reasons, we dismiss this appeal and deny Codal's motion to dismiss as moot.

¶ 55    Appeal dismissed; motion to dismiss denied.