2025 IL App (1st) 241288-U

SECOND DIVISION
February 4, 2025

No. 1-24-1288

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MARCO COLIN, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellant, | ) | of Cook County |
| | ) | |
| v. | ) | 23M1701363 |
| | ) | |
| LORENZO BROWN, ADRIENNE GREEN, and UNKNOWN | ) | Honorable |
| OCCUPANTS d/b/a HAROLD'S CHICKEN AND FAMILY, | ) | Brian R. Porter, |
| | ) | Judge Presiding |
| Defendants-Appellees. | ) | |

JUSTICE McBRIDE delivered the judgment of the court.
Justices Howse and Ellis concurred in the judgment.

**O R D E R**

¶ 1     *Held*: Attorney fees awarded pursuant to commercial lease were not excessive and appellee is also entitled to attorney fees incurred defending the award on appeal.

¶ 2     Commercial property owner Marco Colin, who tried to evict his tenants, Lorenzo Brown and Adrienne Green d/b/a Harold's Chicken and Family ("Brown"), under the erroneous belief that Brown had only a month-to-month tenancy, did not prevail at a bench trial and was ordered to pay $21,525 in attorney fees pursuant to the "prevailing party" clause in their written lease. Colin contends that Brown's fee petition did not conform with *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 983 (1987) and that the amount awarded was excessive.

¶ 3      The following facts are undisputed on appeal. Brown was operating a restaurant at 700 East 100th Place, Chicago, before Colin purchased the property. In late 2019, the then owner of the commercial space had signed a two-year lease with Brown beginning January 1, 2020, at the rate of $1500 per month. The lease gave Brown the option to renew for an additional four years (2022 through 2025), at the rate of $1600 per month. The lease also said that in the event "suit should be brought for recovery of the premises *** the prevailing party shall be entitled to costs incurred in connection with such action, including a reasonable attorney's fee." Brown timely exercised the renewal option on October 26, 2021 by giving the landlord written notice and, on or about February 1, 2022, when the four-year renewal period began, Brown increased the monthly rent payment from $1500 to $1600. During the first month of the renewal period, on February 28, 2022, the landlord's attorney notified Brown that the property had been sold to Colin on February 28, 2022; Brown was still subject to the lease; his $1500 security deposit was being transferred to Colin; Brown's next $1600 rent payment was due on March 1, 2022; and all subsequent rent should be mailed to Colin. Brown complied. However, after Colin received nine timely $1600 rent payments, Colin sent notice that he was terminating the tenancy. In his letter dated November 23, 2022, Colin claimed Brown had a month-to-month tenancy and demanded that Brown vacate the space by December 23, 2022. Brown continued to operate the restaurant. Colin filed this eviction suit on January 24, 2024.

¶ 4      Brown relied on the above facts in a section 2-619 motion to dismiss Colin's action (735 ILCS 5/2-619(a)(9) (West 2022)) and attached the former owner's February 2022 letter as proof that there was a lawful, ongoing tenancy. In response, Colin disputed that Brown renewed. Colin argued that "[q]uite conspicuously," Brown had not attached the letter that was sent to the landlord

in October 2021 to exercise the option and Colin disputed the authenticity of the landlord's letter telling Brown that there was a new owner. Colin also provided his real estate contract with the seller, dated December 17, 2021, which prohibited the seller from extending any leases once he signed the contract. In reply, codefendant Green (who is Brown's wife and business partner) tendered an affidavit in which she swore that she sent the renewal letter and an e-mail to that effect to the landlord, and, although she had not retained a copy of the letter, she was providing a copy of her e-mail. She further swore that the landlord acknowledged the renewal decision over the phone and in person. Thus, the landlord's written notice on February 28, 2022 was his third confirmation that Brown had extended the lease through 2025.

¶ 5     In light of the fact dispute, the circuit court denied Brown's section 2-619 motion and scheduled a trial that was conducted over two afternoons. Brown prevailed at trial. The judgment order specified his right to file an attorney fees petition pursuant to the lease's "prevailing party" clause.

¶ 6     After written and oral arguments on Brown's fee petition seeking $28,805, the circuit court awarded $21,525. The record does not disclose why the court struck invoice entries totaling $7,280. More specifically, the written order does not state the court's reasoning and there is no transcript or bystander's report of the hearing. Colin argues, however, that there are numerous indications in the fee petition that the award was an abuse of discretion.

¶ 7     Fee shifting agreements are an exception to the general rule that an unsuccessful litigant in a civil action is not responsible for the opponent's fees. *Kaiser*, 164 Ill. App. 3d at 983. The standards that govern an award of attorney fees, whether based on the terms of a fee shifting statute or a contract, are well established. *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st)

131887, ¶ 102. An appropriate fee consists of reasonable charges for reasonable services. *Kaiser*, 163 Ill. App. 3d at 983. Pursuant to *Kaiser*, when determining the reasonableness of a fee request, the court is to consider "the skill and standing of the attorneys, the nature of the case, the novelty and/or difficulty of the issues and work involved, the importance of the matter, the degree of responsibility required, the usual and customary charges for comparable services, the benefit to the client [citation], and whether there is a reasonable connection between the fees and the amount involved in the litigation." *Kaiser*, 164 Ill. App. 3d at 984.

¶ 8     A trial judge is permitted to use his or her own knowledge and experience to assess the time required to complete particular activities, and a reviewing court may not reverse an award of attorney fees merely because it may have reached a different conclusion. *Plambeck v. Greystone Management & Columbia National Trustee Co.*, 281 Ill. App. 3d 260, 273 (1996). The trial judge is in a better position than the reviewing court to evaluate the claim. *Norman v. U.S. Bank National Ass'n as Trustee for Structured Asset Mortgage Investments II, Inc.*, 2020 IL App (1st) 190765, ¶ 36. Whether to award attorney fees and in what amount to award attorney fees is a matter of sound discretion and the court's ruling will not be disturbed unless that discretion was abused. *Med+Plus Neck & Back Pain Center, S.C. v. Noffsinger*, 311 Ill. App. 3d 853, 861 (2000); *1002 E. 87th Street LLC v. Midway Broadcasting Corp.*, 2018 IL App (1st) 171691, ¶ 30 (appellate courts rarely overturn an award for attorney fees). An abuse of discretion occurs only when a ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the same view. *Norman*, 2020 IL App (1st) 190765, ¶ 36.

¶ 9     Colin criticizes the contents of Brown's petition and contends that it did not include "explicit mention" of the *Kaiser* factors or "any substantive analysis of [them]" and that Brown

"merely attached certain exhibits in an attempt to bolster [the fee] request." We note that the petition consisted of three pages of argument and attached to it were (1) the judgment order granting Brown leave to file a fee petition, (2) a three-page affidavit prepared by attorney Steve McCann regarding his and co-counsel's experience and customary charges and the fact that Brown has paid all of the attached invoices with the exception of the most recent one, (3) Ball & McCann's attorney engagement letter with Green, and (4) five pages of invoices containing over 200 line items.

¶ 10    Applying *Kaiser*'s factors, Colin argues that the amount Brown sought was "grossly excessive" because the single-issue lawsuit for possession was neither novel nor complex and did not require "greater level of skill, focus or effort." He points out that Brown's section 2-619 motion was denied, there was no discovery, and there were only four court dates. He also contends that the invoice entries are "dubious" and "questionable" and "make a mockery" of specificity, and that the hearing was not sufficiently detailed and resulted in the court "in a wholly arbitrary manner, simply shav[ing] approximately $7,000.00 from the original amount sought." He contends that an analogous case is *Fitzgerald v. Lake Shore Animal Hospital, Inc.*, 183 Ill. App. 3d 655, 661 (1989), in which the trial judge stated that he was going to take a " 'wild guess' " and reduce the $50,029.94 fee request to $25,000 and costs.

¶ 11    Brown responds that the fee petition was more than adequate and that the parties argued all of the *Kaiser* factors in open court. He contends that when Colin criticizes specific invoice entries, such as preparing for court dates and writing correspondence and e-mails, Colin is repeating arguments that persuaded the judge to deduct $7,280 from the petition.

¶ 12    Colin's appeal is not persuasive. He fails to cite any authority that required Brown to expressly discuss the *Kaiser* factors and Brown's petition actually does conform with *Kaiser*. An exhibit attached to a pleading is part of the pleading. *Bianchi v. Savino Del Bene International Freight Forwarders, Inc.*, 329 Ill. App. 3d 908, 921 (2002). Counsel's three-page petition contains salient facts and then the eleven pages of exhibits—particularly the attorney's affidavit and invoices—provide details that are pertinent to the factors. For instance, addressing the "nature of the case," the petition and affidavit summarize that this was a commercial lease dispute, then the procedural history is outlined, and Brown also indicates that the request is based on the lease's fee-shifting clause. The "skill and standing of the attorneys" is addressed by the affidavit's indications that co-counsel Drew Ball and Steve McCann have nearly 10 years of experience as lead trial attorneys in state and federal court and that they were retained by Brown at $350 per hour but have been able to raise their going rate to $400 per hour with other clients. These statements also encompass the "usual and customary charges for comparable services" and indicate that the firm's $350 rate in 2022 and 2023 was reasonable. Counsel also affirmatively stated that Brown paid all of the itemized invoices except for the most recent one. The "novelty and/or difficulty of the issues and work involved, the importance of the matter, [and] the degree of responsibility required" are addressed by indications in the petition, affidavit and invoices that there was at least one attempt to resolve the dispute before the landlord filed suit; counsel repeatedly appeared in court and researched, wrote, and advocated through motion practice and at trial; and counsel also prepared his clients for the trial. Furthermore, the invoices are lengthy and suggest that the landlord complicated the dispute (increased the fees) by removing Brown's business sign and allowing the restaurant's water supply to be shut off. We also see "a reasonable connection between the fees

and the amount involved in the litigation," given that the tenants faced an abrupt end to their source of livelihood, and that the total amount awarded ($21,525) was much less than the amount of rent that was at stake in the suit (36 additional months x $1600 = $57,600). Thus, Colin's contention that the fee petition was deficient is not persuasive.

¶ 13    Colin next argues that fees were "grossly excessive" and "greatly inflated," and that the invoices "make a mockery of the specificity requirements" as they are "vague" and "unclear" and presented in a "nearly-microscopic font." Brown responds that "all of those line items (and others) were already addressed by the trial court" and that the judge reduced some of those entries because he "did not believe [they] warranted the $350 per hour rate" even though the two-lawyer law firm did not employ any support staff. Colin replies in part that Brown "cite[s] nothing in the record to substantiate [the] claim that such arguments were made 'in open court.' "

¶ 14    Colin does not dispute that there was a hearing on the petition, but he failed to meet the appellant's burden of providing a hearing transcript or bystander's report. See *Foutch v. O'Brien*, 99 Ill. 2d at 391-92 (1984) (an appellant has the burden of presenting a sufficiently complete record of the proceedings to support a claim of error); Ill. S. Ct. R. 321 (eff. Oct. 1, 2021) ("The record on appeal shall also include any report of proceedings prepared in accordance with Rule 323."); Ill. S. Ct. Rule 323 (eff. July, 1, 2017) (requiring the appellant to request preparation of a transcript of the proceedings, and stating how to obtain a certified bystander's report when no verbatim transcript is obtainable). Without the report of proceedings that should have been provided to this court, we have no basis to disagree with the circuit court's determination that the specific fees it was awarding were reasonable, or finding that the court abused its discretion. When a record is insufficient to support an appellant's claim, we may presume that the information that was

omitted would support the ruling. *Foutch*, 99 Ill. 2d at 391-92; *Coleman v. Windy City Balloon Port, Ltd.*, 160 Ill. App. 3d 408, 419 (1987) (when a record is lacking crucial facts, we may presume that the circuit court acted properly by entering the challenged order and that the order is supported by whatever was omitted from our consideration). That presumption is warranted here.

¶ 15 Based on the limited record provided in this case, we do not find that the decision to award attorney fees totaling $21,525 was an abuse of discretion. We affirm the award.

¶ 16 The final issue is Brown's request for the attorney fees that he incurred because of Colin's unsuccessful appeal. Colin did not respond to this request.

¶ 17 "Where a party that prevails in the trial court is required to defend that victory on appeal, courts award attorney fees to that party for their work on the appeal, too, provided they prevail on appeal as they did at trial." *Trutin v. Adam*, 2016 IL App (1st) 142853, ¶ 35 (discussing statutory fee-shifting provisions). In determining whether a party has prevailed on appeal for purposes of an award of attorney fees and costs, we look at whether "he or she [wa]s successful on any significant issue" in the appeal. *Aliano v. Transform SR LLC*, 2020 IL App (1st) 172325, ¶ 27. Since the only issue on appeal was resolved in Brown's favor, Brown was the "prevailing party" and is contractually entitled to the appellate expenses. *Trutin*, 2016 IL App (1st) 14253, ¶¶ 45-46; *Aldine Building II v. Jetz Service Co., Inc.*, 2020 IL App (1st) 192368-U, ¶ 18 (granting appellate attorney fees and remanding for their calculation). We would be diluting the fee-shifting clause if we held to the contrary. Accordingly, Brown may file an appellate attorney fees petition in the circuit court and the parties shall be heard there as to the reasonableness of those fees, including the costs of preparing the petition. *Aldine Building*, 2020 IL App (1st) 192368-U, ¶ 18; *Erlenbush v. Largent*,

353 Ill. App. 3d 949, 953 (2004) (amount of attorney fees on appeal are properly determined by petition and evidentiary hearing, and the reviewing court should remand for those purposes); *Trutin*, 2016 IL App (1st) 142853, ¶ 47 (same). We remand with instructions to address Brown's petition.

¶ 18     Affirmed; remanded with instructions.