2026 IL App (1st) 251023-U

Nos. 1-25-1023 & 1-25-1572 (cons.)

Order filed March 10, 2026

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| SAME CONDITION, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 19 L 5407 |
| CODAL, INC., | ) | |
| | ) | |
| Defendant and Counterplaintiff-Appellee | ) | |
| | ) | |
| (Same Condition, LLC and Munish Kumar, | ) | |
| | ) | Honorable |
| Counterdefendants-Appellants). | ) | Thomas More Donnelly, |
| | ) | Judge presiding. |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm the circuit court's contempt finding against Same Condition's president, Munish Kumar. We also affirm the circuit court's attorney fee award to Codal over Kumar's contentions that (1) the court should not have authorized alternate service of the rule to show cause, (2) Codal's in-house counsel cannot recover fees as a matter of law, and (3) Codal's attorney fees are excessive. However, we reduce the

attorney fee award by $9,075 because Codal's in-house counsel cannot recover fees for obtaining a stalking no contact order against Kumar in a separate case.

¶ 2     Munish Kumar, the president of Same Condition, LLC (Same Condition), appeals from the circuit court's contempt finding and $138,685.95 attorney fee award to Codal, Inc. (Codal). Kumar contends that (1) the circuit court should not have allowed Codal to effectuate alternate service of the rule to show cause pursuant to section 2-203.1 of the Code of Civil Procedure (735 ILCS 5/2-203.1 (West 2024)), (2) Codal's in-house counsel cannot recover fees as a matter of law, and (3) Codal's attorney fees are excessive. For the following reasons, we affirm the contempt finding and the court's decision to award attorney fees, but we reduce the fee award by $9,075.

¶ 3                                I. BACKGROUND

¶ 4     Throughout prior appeals in this case, we have referred to Same Condition and Kumar somewhat interchangeably because their assets are intermingled and Kumar describes himself and his company as one entity. See, *e.g.*, *Same Condition, LLC v. Codal*, 2023 IL App (1st) 221441-U, ¶ 30. We continue that practice in this order when discussing the procedural history. But because the contempt proceedings at issue concern only Kumar's behavior and whereabouts, we refer to him individually in our discussion of those proceedings.

¶ 5     This lawsuit arises out of a 2017 contract under which Same Condition hired Codal to develop a medical software application. According to Same Condition, Codal delivered the application six months late and in a defective condition. Three months thereafter, Codal indicated that it needed at least 100 more hours of work to fix the defects and enable the application's public release. Around that time, Same Condition and Kumar began posting disparaging comments online about Codal. On various platforms including Twitter, LinkedIn, Google, and

"codalsucks.blogspot.com," Same Condition and Kumar repeatedly accused Codal of "unethical business practices," incompetence, and having "cheated" Same Condition.

¶ 6    In 2019, Same Condition sued Codal for breach of contract, fraud, and unjust enrichment. Codal brought counterclaims for breach of contract, unjust enrichment, *quantum meruit*, defamation *per se*, defamation *per quod*, commercial disparagement, and violation of the Uniform Deceptive Trade Practices Act (815 ILCS 510/2(a)(8) (West 2018)). As the case progressed, Same Condition continued posting disparaging comments about Codal online. *Same Condition, LLC v. Codal, Inc.*, 2021 IL App (1st) 201187, ¶ 1.

¶ 7                    A. Injunction and First Contempt Proceedings

¶ 8    On December 7, 2021, the circuit court granted summary judgment in Codal's favor on all of Same Condition's claims, as well as Codal's counterclaims for breach of contract, defamation *per quod*, and commercial disparagement. As a remedy for commercial disparagement, the court entered a permanent injunction prohibiting Same Condition and Kumar from publishing disparaging comments about Codal.

¶ 9    Same Condition appealed the injunction twice. *Same Condition, LLC v. Codal Inc.*, 2024 IL App (1st) 230554-U, ¶ 17; *Same Condition, LLC v. Codal, Inc.*, 2022 IL App (1st) 220687-U, ¶ 4. We dismissed both appeals for lack of jurisdiction because Same Condition failed to challenge the injunction within 30 days of its entry, which section 2-1203(a) of the Code of Civil Procedure (735 ILCS 5/2-1203(a) (West 2022)) and Supreme Court Rule 304(a) (eff. March 8, 2016) required. *Same Condition*, 2024 IL App (1st) 230554-U, ¶¶ 19-23; *Same Condition*, 2022 IL App (1st) 220687-U, ¶¶ 41-52. Therefore, "the permanent injunction that the court entered as a remedy

for Same Condition's disparaging online posts remain[ed] in place." *Same Condition*, 2024 IL App (1st) 230554-U, ¶ 35.

¶ 10    On March 28, 2023, Codal filed an emergency motion to hold Same Condition in contempt for violating the injunction. Codal alleged that Same Condition, posing as an organization called "People for Same Condition," started a website named "corporatefraud420.com." Through that website and social media accounts, Same Condition accused Codal of being "an unethical business that did not deliver on its services *** and committed fraud" and claimed that Codal's CEO was "unethical and fraudulent." Same Condition orchestrated at least part of this campaign from India, where it hired people "to hold up signs and film videos about [Codal] using a script prepared by [Same Condition]." Codal alleged that reporting and removing Same Condition's disparaging posts consumed its marketing resources and, as a result, Codal could not grow its business. Codal attached examples of Same Condition's disparaging posts, as well as records suggesting that Kumar himself created much of this content.

¶ 11    The circuit court issued a rule to show cause against Same Condition and Kumar. Following a hearing, on May 17, 2023, the court held Kumar in indirect civil contempt for violating the December 7, 2021, injunction. The court also awarded Codal reasonable attorney fees and costs it incurred in pursuing the contempt finding. Following fee petition briefing, on July 13, 2023, the court awarded Codal $56,770 in attorney fees and costs.

¶ 12                                B. Second Contempt Proceedings

¶ 13    In early February 2025, Kumar resumed posting disparaging comments about Codal online. On February 19, 2025, Codal's CEO Keval Baxi filed a *pro se* petition requesting a stalking no contact order against Kumar. The court hearing that petition granted it the same day. The stalking

no contact order proceedings were separate from this case, before a different judge, and have a different case number, 25 OP 71458.

¶ 14     On February 25, 2025, Codal filed a second emergency motion to hold Kumar in contempt for the online disparagement that occurred throughout February 2025. Codal alleged that its employees received emails from "samecondition@gmail.com" claiming that Codal "cheated" Same Condition. On Twitter and a business-to-business review website, Kumar accused Codal of fraud, incompetence, and unethical conduct. These disparaging comments reduced attendance at a conference Codal hosted. Codal sent Kumar a cease-and-desist letter. Kumar responded by baselessly accusing the circuit court of corruption and refusing to cease his disparagement of Codal. Codal attached as exhibits Kumar's disparaging emails and Twitter posts, the cease-and-desist letter, and Kumar's defiant response to it. Codal requested that the court hold Kumar in contempt and award Codal attorney fees and costs incurred in litigating the second contempt motion.

¶ 15     On February 28, 2025, the court issued a rule to show cause against Kumar and set a contempt hearing for April 21, 2025. The court ordered "personal service" of the rule to show cause on Kumar by April 14, 2025.

¶ 16     On March 13, 15, and 18, 2025, Cook County Sheriff's deputies attempted to serve Kumar with the rule to show cause at a condominium on West Monroe Street in Chicago. A woman told them that Kumar had moved to India and she had "no idea when he w[ould] return." Although this woman did not identify herself, property records suggested that she was Kumar's wife Bharti Raizada, who owns the condominium jointly with Kumar. Codal then obtained Indian government records stating that, as of January 2025, Kumar lived in New Delhi and was running for political

office there. The campaign paperwork Kumar filed in India confirmed that he and his wife jointly owned the Monroe Street condominium in Chicago.

¶ 17    On April 14, 2025, Codal filed a motion to authorize alternate service pursuant to section 2-203.1. Codal sought leave to serve Kumar via his wife at the Monroe Street condominium. Codal alleged that personal service upon Kumar in India was not feasible because "[c]omplying with the applicable international treaties and convention, in combination with requirements imposed by Indian law, would cause substantial delays, likely exceeding one year and perhaps multiple years." Codal attached the Sheriff's affidavit of non-service describing their interactions with Raizada in mid-March, property records showing that Kumar and his wife owned the Monroe Street condominium, and Indian government records indicating that Kumar lived in New Delhi and was running for office there. Codal also submitted the affidavit of Aaron Lukken, a Missouri attorney specializing in international law, who attested that "the likelihood of successfully serving an individual in India is so low as to be utterly impractical" and it would take at least a year even if it were successful.

¶ 18    On April 17, 2025, the circuit court amended the rule to show cause to omit the requirement of personal service, extended the service deadline to May 12, 2025, and reset the contempt hearing for May 19, 2025. The amended rule to show cause required "delivery to Kumar through his spouse, Bharti Raizada, at [the Monroe Street condominium], via regular U.S. Mail, FedEx, and personal delivery to Raizada or by leaving a copy at her door."

¶ 19    On May 13, 2025, Codal filed the affidavit of special process server Raymond Bengochea. Bengochea attested that he spoke with Raizada on May 10, 2025, through the intercom system at the Monroe Street condominium. Raizada confirmed her identity but disconnected when

Bengochea said he had brought a package for personal delivery. Bengochea left the package at the condominium building's front door. The package contained (1) the April 17, 2025, rule to show cause, (2) the December 7, 2021, injunction order, (3) Codal's February 25, 2025, emergency motion for a finding of contempt, and (4) a subpoena for Raizada's testimony with a $30 check for witness and milage fees. Bengochea attested that, as he drove away, he saw "an adult woman with long hair leaning down, retrieving the package, and bringing it inside the residence." Bengochea also sent the above documents to the Monroe Street condominium by U.S. mail and FedEx.

¶ 20    On May 15, 2025, Kumar's attorney filed a motion to dismiss the rule to show cause, contending that the circuit court lacked "personal jurisdiction" over Kumar due to improper service of the rule to show cause. In an affidavit attached to the motion, Kumar attested that he had moved to India in September 2023 and had been estranged from his wife since then. Kumar's motion argued that Codal could not serve him at the Monroe Street condominium pursuant to section 2-203(a)(2) (735 ILCS 5/2-203(a)(2) (West 2024)) because that was not his "usual place of abode." In addition, Kumar contended that Codal knew he lived in India but never attempted to serve him there, so Codal could not meet section 2-203.1's requirement of "an affidavit showing Codal diligently tried to serve Dr. Kumar but was unable to do so." Therefore, Kumar concluded, Codal did not effectuate abode service of the rule to show cause under section 2-203(a)(2) or alternate service under section 2-203.1.

¶ 21    On May 19, 2025, the court heard Kumar's motion to dismiss. Codal and Kumar appeared through their respective attorneys. Kumar reiterated his motion's arguments. Codal argued that the Sheriff's affidavit of nonservice demonstrated Codal's diligence in attempting to serve Kumar in Illinois. Codal contended that there was no dispute Kumar lived in India and personal service on

him there would have been impracticable, which was all that section 2-203.1 required for alternate service. The court denied Kumar's motion to dismiss but did not explain why.

¶ 22    The court then proceeded to a contempt hearing. The court gave Kumar the opportunity to present evidence in his defense, but he declined:

> "THE COURT: Do you have any evidence you wish to present?
>
> [COUNSEL FOR KUMAR]: We do not have evidence.
>
> THE COURT: You rest?
>
> [COUNSEL]: I think they go first, wouldn't they?
>
> THE COURT: No, the burden is on you.
>
> [COUNSEL]: We do not have any witnesses to call to testify.
>
> THE COURT: So you rest?
>
> [COUNSEL]: Yes. Your Honor, if there's something—We rest. We don't have a witness."

The court found that Kumar did not rebut Codal's *prima facie* contempt showing.

¶ 23    On May 21, 2025, the court issued a written order finding Kumar in indirect civil contempt for violating the December 7, 2021, injunction. The court ordered Kumar to pay the Clerk of the Court $10,000 per day until he certified that he had "permanently removed all web-based and social media-based postings discussing, disparaging, or defaming Codal, Inc. and/or Keval Baxi." Kumar filed such a certification the same day. Additionally, the court awarded Codal "costs and reasonable attorneys' fees expended in bringing the motion for rule to show cause, the motion for alternative service, defending against [Kumar's] motion to dismiss, and in prosecuting the contempt hearing."

¶ 24     On May 29, 2025, Kumar filed a notice of appeal challenging the contempt finding.

¶ 25                              C. Attorney Fee Proceedings

¶ 26     Codal sought $185,532.20 in fees and costs: $117,494.30 in fees for outside counsel, $57,987.50 in fees for in-house counsel, and $10,050.40 in costs. In-house counsel consisted of Codal's general counsel and senior corporate counsel. Outside counsel was Dentons US LLP (Dentons), a Kansas City firm. Dentons staffed the case with a senior partner, two partners, two associates, and a paralegal.

¶ 27     Codal argued that its fees and costs were reasonable because "Kumar started this latest fight in February 2025 when, nearly two years after being held in contempt for disparaging Codal and violating the December 2021 Order, he renewed his disparaging or wrongful conduct." Codal delegated most of the contempt proceeding work to outside counsel, who billed at lower rates than in-house counsel. Codal also explained that, to obtain the contempt finding, it had to (1) "monitor Kumar's daily, multi-platform social-media postings, catalog them, and marshal them as exhibits for Codal's motion and hearing," (2) locate Kumar in India, and (3) hire a private investigator to serve Raizada in Chicago despite "her erratic schedule and apparent attempts to evade service." Codal attached its attorneys' billing records and summaries of their skills and experience.

¶ 28     Kumar argued that the court should award $57,000, approximately the same amount as it awarded in the first contempt finding. Kumar contended that Codal should recover none of its in-house counsel's fees because "Illinois law does not permit recovery of in-house counsel fees," citing *Uptown People's Law Center v. Department of Corrections*, 2014 IL App (1st) 130161. Kumar also made specific objections to in-house counsel's billing. For example, in-house counsel billed 18.5 hours in connection with obtaining the stalking no contact order against Kumar, which

was unrelated to contempt litigation. In-house counsel also billed 32 hours for reviewing Kumar's online postings and 17 hours "requesting sites to take down internet posts."

¶ 29　Additionally, Kumar argued that outside counsel's fees were excessive. Outside counsel billed more than $110,000, approximately double the amount the court awarded for essentially the same work in the first contempt proceedings. Kumar contended that the second contempt proceedings "were not complex" as "[t]here was no discovery [or] evidentiary hearing." Kumar argued that outside counsel overstaffed the case with three partners and two associates, resulting in duplicative billing. Finally, Kumar argued that invoices showed that Codal had not paid outside counsel. Therefore, Codal had not actually expended the funds it sought to recover and "might subsequently negotiate a lower payment than what the Court awards," resulting in profit for Codal.

¶ 30　Codal's reply argued that in-house counsel could recover fees "as a sanction for contemptuous or frivolous misconduct." Codal maintained that Kumar's behavior forced Codal's in-house counsel to perform work they would not have otherwise done to combat Kumar's campaign of disparagement and build a compelling case for holding him in contempt. As to Kumar's argument that outside counsel overstaffed the case, Codal contended that it was proper for multiple attorneys to work on the case, particularly where an associate with a lower rate did most of the work. Finally, Codal stated that it had paid outside counsel and attached an affidavit from one of Dentons' attorneys in support.

¶ 31　On July 28, 2025, the circuit court awarded Codal $138,685.95 in attorney fees. The court rejected Kumar's argument that Codal could not recover in-house counsel's fees. The court explained that it awarded fees "as a punishment against [Kumar] who abuses the judicial process" and cited cases in which attorneys recovered their own fees for having to defend themselves against

frivolous lawsuits. See, *e.g.*, *McCarthy v. Taylor*, 2019 IL 123622, ¶ 29; *Law Offices of Brendan R. Appel v. Georgia's Restaurant and Pancake House, Inc.*, 2021 IL App (1st) 192523, ¶ 58. The court awarded all of in-house counsel's requested fees, $57,987.50. Next, the court ruled on Kumar's specific objections to outside counsel's fees and reduced them by $30,868.45 due to duplicative billing. The court also reduced Codal's paralegal fees by $5,927.40 due to billing for administrative work. Finally, the court awarded Codal costs to be taxed by the Clerk.

¶ 32     On August 13, 2025, Same Condition filed a notice of appeal from the attorney fee order. We consolidated the contempt appeal with the attorney fee appeal.

¶ 33                             II. ANALYSIS

¶ 34     Kumar challenges the second contempt finding and the related attorney fee award.

¶ 35                         A. Appellate Jurisdiction

¶ 36     Kumar filed separate notices of appeal from the contempt and attorney fee orders. Both notices of appeal cite Supreme Court Rules 303(a)(1) (eff. July 1, 2017) and 304(b)(5) (eff. March 8, 2016) as jurisdictional bases. Rule 303(a)(1) governs appeals from final orders and Rule 304(b)(5) governs appeals from contempt orders that impose monetary or other penalties. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017); Ill. S. Ct. R. 304(b)(5) (eff. March 8, 2016). Codal also submits that we have jurisdiction pursuant to Rule 304(b)(5). We agree. But because of this case's unusual piecemeal nature, we briefly explain why we have jurisdiction.

¶ 37     Supreme Court Rule 304(b)(5) provides that "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty" is appealable without a finding that "there is no just reason for delaying either enforcement or appeal or both," which Rule 304(a) would otherwise require. Ill. S. Ct. R. 304(a), (b)(5) (eff. March 8, 2016). The circuit court's May

21, 2025, order held Kumar in contempt and imposed a monetary penalty of $10,000 per day. Therefore, under Rule 304(b)(5), we have jurisdiction to review the contempt finding.

¶ 38    The court's attorney fee award was "incidental to its inherent contempt powers" and properly "exercised upon a finding of contempt." See *Edwards v. Pekin Memorial Hospital*, 2023 IL App (3d) 210005, ¶ 49. "The court may require a contemptuous party to bear the contempt action's reasonable costs and attorney fees," as the circuit court did in this case. See *id.* "[T]he award of attorney fees was a penalty imposed because of the contempt finding," so we have jurisdiction to review it under Rule 304(b)(5) as well. See *Pardilla v. Village of Hoffman Estates*, 2023 IL App (1st) 211580, ¶ 28.

¶ 39    Kumar's brief's jurisdictional statement cites Rule "303(b)(5)," which we presume is a typographical error. Rule 303(b)(5) governs amendments to notices of appeal, which are not at issue here. See Ill. S. Ct. R. 303(b)(5) (eff. July 1, 2017). This discrepancy does not deprive us of jurisdiction. The timely filing of a notice of appeal is generally "the only jurisdictional step required to perfect an appeal." *In re D.D.*, 212 Ill. 2d 410, 417 (2004). Here, Kumar timely filed notices of appeal from the second contempt finding and the attorney fee order. See Ill. S. Ct. R. 304(b) (eff. March 8, 2016) (the time for filing a notice of appeal pursuant to Rule 304(b) is the same as in Rule 303); Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017) (an appellant must file a notice of appeal within 30 days after entry of the challenged judgment). Therefore, we have jurisdiction over this appeal pursuant to Rule 304(b)(5) despite the discrepancy between Kumar's notice of appeal and his brief's jurisdictional statement.

¶ 40                      B. Notice of Contempt Proceedings

¶ 41    Kumar contends the circuit court erred in authorizing alternate service of the rule to show cause. Specifically, Kumar argues that Codal did not comply with section 2-203.1 because its motion for alternate service did not (1) demonstrate due diligence in attempting to serve him or (2) include an affidavit "stating the nature and extent of the investigation made to determine the whereabouts of the defendant" and "a specific statement showing that diligent inquiry as to the location of the individual defendant was made." See 735 ILCS 5/2-203.1 (West 2024).

¶ 42    A court may hold a party in civil contempt for willfully disobeying a court order. *In re Marriage of Harnack and Fanady*, 2022 IL App (1st) 210143, ¶ 46. Civil contempt compels the party to perform a specific act whereas criminal contempt punishes past misconduct. *In re Marriage of Betts*, 200 Ill. App. 3d 26, 43 (1990). Direct contempt occurs in court; indirect contempt occurs outside of court. *Id.* at 47-48. "Once the party bringing the contempt petition establishes a *prima facie* case of disobedience of a court order, the burden shifts to the alleged contemnor to prove that the failure to comply was not willful or contumacious and that there exists a valid excuse for his failure." *Harnack*, 2022 IL App (1st) 210143, ¶ 46.

¶ 43                                          1. Due Process

¶ 44    Kumar does not challenge the merits of the circuit court's contempt finding. Rather, he challenges how he received notice of contempt proceedings, namely, by alternate service at the Monroe Street condominium.

¶ 45    "Indirect civil contempt sanctions may not be imposed upon an individual unless he or she has been accorded due process of law." *Betts*, 200 Ill. App. 3d at 52. In civil contempt proceedings, the contemnor is entitled to only "minimal due process," which is notice and opportunity to be heard. (Internal quotation marks omitted.) *Id.* at 53. Specifically, the contemnor must receive an

evidentiary hearing and adequate notice of it. *Id.* The notice must (1) "contain an adequate description of the facts on which the contempt charge is based" and (2) "inform the alleged contemnor of the time and place of an evidentiary hearing on the charge within a reasonable time in advance of the hearing." *Id.* Typically, the rule to show cause serves as the notice; it is "the method by which the court brings the parties before it for a hearing." *In re Marriage of LaTour*, 241 Ill. App. 3d 500, 507 (1993). This issue is ultimately a question of due process (*Betts*, 200 Ill. App. 3d at 52), and we review *de novo* whether a procedure maintained a party's right to due process (*People v. Stoecker*, 2020 IL 124807, ¶ 17).

¶ 46    The circuit court issued a rule to show cause on February 28, 2025. That rule to show cause ordered Kumar to appear "at 50 W. Washington St. Chicago, Illinois 60602, Courtroom #1912 at the hour of 10:00 AM on April 21, 2025" and "show cause, if any, as to why [he] should not be adjudged guilty of and punished for contempt *** for failure to obey" the December 7, 2021, injunction. The rule to show cause contained an adequate description of the facts on which the contempt charge was based (violation of the December 7, 2021, injunction) and informed Kumar of the time and place of the evidentiary hearing within a reasonable time (more than seven weeks) in advance of the hearing. See *Betts*, 200 Ill. App. 3d at 53. Notice of the contempt proceedings was therefore proper.

¶ 47    There is no dispute that Kumar and his attorney received actual notice of the rule to show cause. On May 15, 2025, Kumar's attorney filed a motion to dismiss the rule to show cause, which argued that "Codal sent the Cook County Sheriff to serve the initial Rule to Show Cause at the residence of Dr. Kumar's wife in Chicago, Illinois, even though [Codal] knew Dr. Kumar did not live there." That motion proved that Kumar's attorney (1) received notice of the rule to show cause

and (2) knew of Codal's attempts to serve Kumar at the Monroe Street condominium that he and his wife owned. Moreover, Kumar himself submitted an affidavit in support of the motion to dismiss, so he must have known of the contempt proceedings as well. Four days after filing that motion, Kumar's attorney appeared at and participated in the contempt hearing. Kumar received the two components due process requires in this context: notice and a hearing.

¶ 48    Kumar attempts to equate the minimal due process required for notice of contempt proceedings with service of process (*i.e.*, a summons and a complaint), which creates personal jurisdiction over a newly added defendant. See *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 18 ("Personal jurisdiction may be established either by service of process in accordance with statutory requirements or by a party's voluntary submission to the court's jurisdiction."). For example, Kumar cites a case in which the circuit court erred in allowing the plaintiff to effectuate alternate service of a summons and complaint upon a defendant because the plaintiff did not comply with section 2-203.1. *Thompson v. Ross Dialysis-Englewood, LLC*, 2017 IL App (1st) 161329, ¶ 20. *Thompson* addressed only service of process to bring a new defendant into a lawsuit. It said nothing about notice of contempt proceedings to a party who, like Kumar, has been in the case for years. To the extent Kumar suggests the circuit court lacked personal jurisdiction over him during the second contempt proceedings due to the way Codal served the rule to show cause, we disagree. Indirect civil contempt proceedings are a continuation of the original cause of action. *In re Marriage of O'Malley ex rel. Godfrey*, 2016 IL App (1st) 151118, ¶ 27. Kumar has been a party to the original cause of action since 2019 and has litigated it over the past seven years. Codal did not have to reestablish personal jurisdiction over Kumar for the second contempt proceedings.

¶ 49    Kumar was entitled to "minimal due process" with respect to contempt proceedings (see *Betts*, 200 Ill. App. 3d at 53), and that is what he received. Accordingly, we affirm the second contempt finding over Kumar's objections to the manner in which he received actual notice of those proceedings.

¶ 50                                              2. Waiver

¶ 51    As an alternative basis for affirming the contempt order, we find that Kumar waived his objections to how he received notice of the second contempt proceedings. "An individual charged with indirect civil contempt may waive service of written notice of the charge by voluntarily appearing in court and defending against the charge." *Id.* Kumar's attorney appeared at the contempt hearing and orally argued his motion to dismiss the petition for rule to show cause. After the court denied that motion, it gave Kumar's attorney the opportunity to present evidence in his defense. He declined that opportunity, but he could have presented a defense to the charge if he wished. Then, when Codal filed its petition seeking attorney fees associated with the second contempt proceedings, Kumar's attorney filed objections to it. Because Kumar "continued to participate in indirect civil contempt proceedings, 'he waived his objections that he was not properly served with process and did not receive sufficient notice of the civil contempt charges.' " See *Harnack*, 2022 IL App (1st) 210143, ¶ 69 (quoting *Betts*, 200 Ill. App. 3d at 65).

¶ 52                                        B. Attorney Fees

¶ 53    Kumar also challenges the circuit court's attorney fee award. Kumar contends Codal cannot recover its in-house counsel's fees as a matter of law and both in-house and outside counsel's fees are excessive.

¶ 54                                    1. In-House Counsel's Fees

¶ 55 Kumar argues that, as a matter of law, Codal cannot recover its in-house counsel's fees. We review this issue *de novo* because it concerns a question of law as to whether the circuit court had the authority to award fees. See *Grate v. Grzetich*, 373 Ill. App. 3d 228, 231 (2007).

¶ 56 Our supreme court has not yet answered "the general question of whether an entity could *ever* claim *** attorney fees for work performed by its own in-house attorneys." (Emphasis in original.) *State ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 2018 IL 122487, ¶ 31. But it has held than an attorney who defends himself against a frivolous complaint can recover his own fees as a sanction under Supreme Court Rule 137 (eff. Jan. 1, 2018). *McCarthy*, 2019 IL 123622, ¶ 32. That is because "[t]he essential underlying policy of Rule 137 of discouraging frivolous or harassing litigation is furthered by imposing sanctions in the form of an award of attorney fees in favor of a *pro se* attorney defending against meritless claims." *Id.* ¶ 28. "Rule 137 sanctions [are] analogous to contempt sanctions," so *McCarthy's* reasoning applies here. See *Law Offices of Brendan R. Appel*, 2021 IL App (1st) 192523, ¶ 58.

¶ 57 Kumar caused the second round of contempt litigation by restarting his online disparagement campaign in early February 2025. Kumar's behavior had the same effect as a plaintiff filing a frivolous lawsuit: it forced Codal's in-house attorneys to perform work they would not otherwise have done to protect their client from Kumar's harassment. See *McCarthy*, 2019 IL 123622, ¶ 28 ("defendant did not initiate or otherwise invite the frivolous pleadings. Nevertheless, defendant was forced to defend against the frivolous claims filed by plaintiff"). In-house counsel's attorney fees are a proper penalty for Kumar's misconduct. See *id.* ¶ 29.

¶ 58 Kumar relies on *Uptown People's Law Center*, in which this court held that a legal clinic could not recover fees for work its in-house counsel performed in prosecuting a Freedom of

Information Act (FOIA) claim. *Uptown People's Law Center*, 2014 IL App (1st) 130161, ¶ 25. The court reasoned that awarding the legal clinic's in-house counsel fees for FOIA litigation they initiated "would encourage salaried employees working for a not-for-profit organization to engage in fee generation for the organization's behalf." *Id. Uptown People's Law Center* did not involve contempt proceedings or attorney fees as sanctions, so its reasoning does not apply to this case. We have no concern that Codal's attorneys will encourage Kumar to continue disparaging their client so they can bill more in future contempt proceedings.

¶ 59     Kumar also contends that Codal seeks to profit from contempt litigation. He speculates that Codal requested in-house counsel's fees based on rates they would hypothetically charge third parties, which may be higher than what Codal pays in-house counsel. We reject this argument. As Kumar acknowledges, Codal's in-house counsel are salaried, which means they do not charge an hourly rate or bill for specific work. Nevertheless, the petition seeking in-house counsel's fees for their work in contempt proceedings had to "include records containing facts and computations upon which the charges are based and specify the services provided, by whom, as well as the time expended and the hourly rate charged." See *Estate of Price v. Universal Casualty Co.*, 334 Ill. App. 3d 1010, 1013 (2002). So, it was reasonable for Codal to rely on hourly rates in-house counsel would charge third parties. Codal had to show only that those rates were reasonable. See *Robinson v. Point One Toyota, Evanston*, 2017 IL App (1st) 152114, ¶ 31. Kumar has never contended that the in-house counsel's claimed hourly rates are unreasonable; rather, he believes they may not be what Codal actually pays in-house counsel. That speculation does not warrant wholesale reversal of in-house counsel's fees. This court has explained that

"[a]n appropriate remedy, in cases of both civil and criminal contempt, may well be to require the contumacious party to bear the reasonable costs, as well as attorneys' fee, of the contempt proceeding. *Although there may be some incidental benefit to the moving party*, it would be inequitable not to require the contumacious party to pay such costs." (Emphasis added.) *Frank B. Hall & Co., Inc. v. Payseur*, 99 Ill. App. 3d 857, 862 (1981).

Accordingly, we affirm the circuit court's holding that Codal can recover its in-house counsel's fees.

¶ 60                                2. Excessive Billing

¶ 61    Kumar contends that both in-house and outside counsel's fees are excessive. A party seeking attorney fees as a sanction for contempt generally must present detailed billing records to establish that the fees are reasonable. *Village of Lakemoor v. First Bank of Oak Park*, 136 Ill. App. 3d 35, 44 (1985). Those billing records should "detail the work that was performed, who performed it, the amount of time spent on the task described, and the amount charged for the services." *900 North Rush LLC v. Intermix Holdco, Inc.*, 2019 IL App (1st) 181914, ¶ 43. In awarding attorney fees, the court should consider

> "the skill and standing of the attorney employed; the nature of the cause and the novelty and difficulty of the questions at issue; the amount and importance of the subject matter; the degree of responsibility involved in the management of the cause; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client." *Id.* ¶ 41.

"[T]he party seeking the fees always bears the burden of presenting sufficient evidence from which the trial court can render a decision as to whether the fees are compensable." *Id.* ¶ 44.

¶ 62    We review the circuit court's fee award for an abuse of discretion. *Id.* A court abuses its discretion "when its ruling 'is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *Taylor v. County of Cook*, 2011 IL App (1st) 093085, ¶ 23 (quoting *People v. Caffey*, 205 Ill. 2d 52, 89 (2001)).

¶ 63    With one exception we address below, the circuit court did not abuse its discretion in the amount of attorney fees it awarded Codal. Codal presented detailed billing records for in-house and outside counsel and Kumar filed written objections to both. The court reduced outside counsel's fees by $30,868.45 due to billing of duplicative and administrative tasks and reduced paralegal fees by $5,927.40, for a total reduction of $36,795.85. This significant reduction shows that the circuit court considered Kumar's objections and sustained them where appropriate. In fact, the court's order included a chart that individually ruled on 42 of Kumar's objections to outside counsel's billing. The attorney fee order demonstrates the court's thoughtful exercise of judgment and not an abuse of discretion. See *900 North Rush*, 2019 IL App (1st) 181914, ¶ 46 (circuit court did not abuse its discretion where it "looked at the itemized billings and scrutinized the petition for redundancies," "expressly addressed 'duplicative efforts' in a section of its written order," and " 'reviewed and addressed work descriptions on an entry-by-entry basis.' ").

¶ 64    However, Codal cannot recover in-house counsel's fees related to the February 19, 2025, stalking no contact order against Kumar. Codal's fee petition included the following billing entries for in-house counsel: On February 18, 2025, senior corporate counsel Joseph Thorp billed 3 hours and $1,050 for "[p]repar[ing] documentation for order of protection stalking no contact order." On February 19, 2025, general counsel Emily Moore billed 4.5 hours and $2,475 for "[a]ttend[ing] Cook County Circuit Court with Keval Baxi to seek order of protection stalking no contact order."

On March 3, 2025, Thorp billed 2.5 hours and $875 for "[d]raft[ing] second notice of stalking no contact order to be sent to Munish Kumar." The same day, Moore billed 1.5 hours and $825 for "[r]eview[ing], revis[ing], and send[ing] second notice of stalking no contact order to Munish Kumar under his various alias email addresses." On March 12, 2025, Moore billed 1 hour and $550 for "[p]reparing for stalking no contact order hearing," as well as 2.5 hours and $1,375 for "[a]ttend[ing] Circuit Court Room 403 at 8.45am regarding stalking no contact order and attempts to serve on respondent." On March 31, 2025, Moore billed 1 hour and $550 for "[p]repar[ing] for stalking no contact order hearing," as well as 2.5 hours and $1,375 "[a]ttend[ing] Circuit Court Room 403 at 10.30am regarding stalking no contact order and attempts to serve on respondent." These entries total 18.5 hours and $9,075. Kumar objected to these entries, explaining that

> "Codal claims to have spent at least 18.5 hours related to obtaining an *ex parte* no contact order against Kumar (although Codal never alleged that Kumar ever physically approached or threatened Codal's executives). *See* entries on 2/18, 2/19, 3/3, 3/12, and 3/31. That proceeding, however, was separate from the contempt proceedings."

This objection was correct, but the circuit court did not address it or reduce in-house counsel's fees.

¶ 65    Codal cannot recover in-house counsel's fees related to the stalking no contact order for three reasons. First, those fees were beyond the scope of what the circuit court awarded. The contempt order awarded Codal attorney fees "expended in bringing the motion for rule to show cause, the motion for alternative service, defending against [Kumar's] motion to dismiss, and in prosecuting the contempt hearing." Similarly, the fee order stated that "Codal may recover in-house counsel fees it incurred *as a result of the contempt proceedings*." (Emphasis added). These

orders clearly defined the limits of Codal's recoverable attorney fees, and they did not include the fees arising from the stalking no contact proceedings. Those proceedings occurred in a separate case, under a different case number, before a different judge, and began six days before Codal even filed its second motion for a rule to show cause.

¶ 66     Furthermore, the record contains contradictions regarding whether *any* attorneys worked on the stalking no contact order. As stated above, in-house counsel billed for work on the stalking no contact order. But in both the petition for the stalking no contact order and the order itself, Baxi checked boxes indicating he was *pro se*. Baxi's personal contact information appears on both documents. No attorney's name or contact information appears on either document. We know this because the stalking no contact petition and order are attached to Codal's motion for alternate service. Codal had the burden of proving that its in-house counsel did in fact work on stalking no contact proceedings (see *900 North Rush*, 2019 IL App (1st) 181914, ¶ 44), and it presented a conflicting record on this issue.

¶ 67     Finally, the stalking no contact order was not necessary for Codal to prosecute the second contempt proceedings. Those contempt proceedings were based on Kumar disparaging Codal online from India, whereas stalking no contact proceedings were based on Kumar's apparent threats "to attend [Baxi's] events." Stalking no contact proceedings began before, proceeded separately from, and did not affect the contempt litigation for which the court awarded Codal attorney fees. In addition, Codal took a somewhat contradictory position: its motion for alternate service claimed that Kumar was effectively unreachable in India, but Baxi's petition for a stalking no contact order expressed concern that Kumar would travel to the United States to harass him in person.

¶ 68    Codal argues that the "*ex parte* no-contact order *** resulted from Kumar's unrelenting personal disparagement of Codal's executives—*i.e.*, the very activity for which he was held in contempt." We disagree. Kumar disparaging Codal and its executives in online posts from India did not require in-house counsel to seek or bill for a stalking no contact order that prohibited Kumar from physically approaching Baxi in Chicago.

¶ 69    As to Kumar's remaining objections to in-house counsel's fees, the circuit court properly exercised its discretion in overruling them. For example, Kumar complains that in-house counsel billed 17 hours and $8,250 for "requesting that third-party sites take down internet posts." It was reasonable for in-house counsel, while monitoring and documenting Kumar's disparaging posts to build their case for contempt, to also request that third-party sites remove those disparaging posts. That activity was intertwined with in-house counsel's overarching goal of protecting Codal from Kumar's disparagement. Accordingly, we reduce in-house counsel's fees by $9,075. See *id.* ¶ 55.

¶ 70                          3. Appellate Attorney Fees

¶ 71    Finally, Codal requests this court to award "fees and costs associated with this appeal and remand accordingly." Codal does not explain this request beyond citing *Colin v. Brown*, 2025 IL App (1st) 241288-U, and *MKM Oil, Inc. v. Welk*, 2025 IL App (4th) 240284-U. Those cases involved attorney fees awarded pursuant to contractual fee-shifting provisions. *Colin*, 2025 IL App (1st) 241288-U, ¶ 17; *MKM Oil*, 2025 IL App (4th) 240284-U, ¶ 167. Where a party obtains attorney fees under a contractual fee-shifting provision and successfully defends that award on appeal, it can also recover fees and costs for the appeal. *Colin*, 2025 IL App (1st) 241288-U, ¶ 17. But Codal did not recover fees pursuant to a contractual fee-shifting provision. It recovered fees as contempt sanctions, and the circuit court limited that award to fees incurred in the second

contempt proceedings. We will not expand the circuit court's clear language to include fees related to work performed in this appeal.

¶ 72    The only other basis for awarding Codal appellate fees would be under Supreme Court Rule 375(b) if we determined that Kumar's appeal was frivolous. See Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). But Kumar's appeal was not frivolous. He successfully challenged Codal's recovery of in-house counsel's fees related to the stalking no contact order. Accordingly, we deny Codal's request for appellate attorney fees and costs.

¶ 73                                III. CONCLUSION

¶ 74    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County but reduce Codal's in-house counsel's fees by $9,075.

¶ 75    Affirmed as modified.